NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LA QUINTA FRANCHISING LLC, <br><br> Plaintiff, <br><br> v. <br><br> SHIN HOSPITALITY, INC., PERCY POONIWALA, and DINAZ SURTEE <br><br> Defendants/Counter Claimants/Third-Party Claimants <br><br> v. <br><br> LQ MANAGEMENT LLC and TRAVEL & LEISURE LLC <br><br> Third-Party Defendants. | Civil Action No. 22-5183 <br><br> **OPINION** <br><br> September 29, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on Plaintiff La Quinta Franchising LLC's ("LQF"), third-party Defendant LQ Management LLC's ("LQM"), and Defendants Shin Hospitality ("Shin"), Percy Pooniwala ("Pooniwala"), and Dinaz Surtee's ("Surtee") (collectively "Defendants") cross Motions for Summary Judgment. (ECF 71, "Defendants' Motion" or "DMSJ"; ECF 72, "Plaintiff's Motion" or "PMSJ"; collectively "Motions.") The parties opposed the Motions. (ECF 75, "Plaintiff's Opposition" or "Pl. Opp."; ECF 76, "Defendants' Opposition" or "Def. Opp.") The parties filed replies. (ECF 77, "Defendants' Reply" or "Def. Reply"; ECF 78, "Plaintiff's Reply" or "Pl. Reply.") The Court has decided these motions upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local

1

Rule 78.1. For the reasons stated below, Plaintiff's Motion is **GRANTED** and Defendants' Motion is **DENIED.**

    I.        **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

This dispute concerns a Franchise Agreement between Plaintiff and Defendants in which the parties contracted for Defendants to operate a hotel facility in Merrillville, Indiana ("the Merrillville Facility") under the La Quinta brand in exchange for paying certain fees to Plaintiff. Plaintiff asserts (in part) that Defendants have failed to comply with the terms of the Franchise Agreement and thus are liable to Plaintiff for the contractual fees and liquidated damages. Defendants assert (in part) that Plaintiff breached the Franchise Agreement by failing to provide certain disclosures as required by FTC regulations, relieving Defendants of their contractual obligations.

Plaintiff La Quinta Franchising LLC is a Nevada limited liability company with its principal place of business in New Jersey. (ECF 1, "Compl." ¶ 1.) Defendant Shin Hospitality, Inc. is a Minnesota corporation with a principal place of business in Minnesota, and Defendants Percy Pooniwala and Dinaz Surtee are natural persons residing in Minnesota. (*Id*. ¶¶ 2-4.) Third-party Defendant LQ Management LLC is a Delaware limited liability company with its principal place of business in New Jersey. (ECF 72-2, "Plaintiff's Statement of Undisputed Material Facts" or "PSUMF," ¶ 2.)

In 2020, Pooniwala contracted to purchase the Merrillville Facility from CPLG Properties LLC; the parties made the conveyance of property effective on February 9, 2021. (PSUMF ¶ 26; ECF 72-15, "Special Warranty Deed.") On August 24, 2020, before the effective date of the

---

[1] The facts and procedural history are drawn from the Complaint (ECF 1, "Compl."), the Motions, and the exhibits attached thereto. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

conveyance, Pooniwala applied to LQF for Shin Hospitality to franchise the facility as a La Quinta. (PSUMF ¶ 27; ECF 72-16, "La Quinta Franchise Application.") LQF provided Shin and Pooniwala with a Franchise Disclosure Document ("FDD") dated March 31, 2020 (and amended on October 9, 2020), which Defendants reviewed and signed on December 23, 2020. (ECF 72-7, ECF 72-8.) On February 10, 2021, the parties entered into the Franchise Agreement (ECF 72-6), and effective as of that date, Pooniwala and Surtee executed a guaranty agreement (the "Guaranty") in which they assumed liability for Shin's obligations under the Franchise Agreement. (ECF 72-9.)

After completing the conveyance of the property and executing the Franchise Agreement and Guaranty, Shin began operating the Merrillville Facility as a La Quinta hotel. (PUSMF ¶ 10.) On June 19, 2022, Shin's representative Andy Rathod sent a letter to Joe Maida, the Director of Contract Compliance at Wyndham Hotel Group, demanding that "the Franchisor and Franchisee relations between the two parties terminate immediately, so as the hotel has some chance of surviving by opening its reservation system independently." (ECF 72-10 at DEF_00654.) On June 29, 2022, Shin's counsel Jaren L. Johnson sent a letter to LQF provide notice of Shin's claims against LQF, propose a resolution to those claims, and request that LQF terminate the Franchise Agreement. (ECF 72-11.) On August 23, 2022, LQF and Wyndham sent a letter to Shin's counsel acknowledging termination of the Franchise Agreement, denying Shin's allegations of misconduct against them, and demanding that Shin fulfill certain post-termination obligations. (ECF 72-12.)

That same day, August 23, 2022, LQF filed the Complaint in the instant action, invoking diversity jurisdiction, requesting that this Court enforce the Franchise Agreement by: (1) enjoining Defendants to account for all revenue they derived under the Franchise Agreement; (2) finding Defendants liable for liquidated damages of $801,021.41; (3) awarding actual damages of an as-

yet-undetermined amount; (4) awarding Recurring Fees totaling $124,016.50; and (5) allowing Plaintiff to collect prejudgment interest, fees and costs of suit. (Compl. ¶¶ 25-48.) On October 19, 2022, Defendants filed an Answer to the Complaint, which included third-party complaints and counterclaims against Wyndham Hotel Group LLC, Wyndham Worldwide Corporation (collectively "Wyndham"), and LQF. (ECF 10.) Defendants amended their Answer on July 12, 2023, and again on August 10, 2023, adding third-party claims against Travel & Leisure LLC and LQM. (ECF 33, 37.) LQF and LQM filed Answers to Defendants' counterclaims and third-party complaint on October 3, 2023. (ECF 42.) The parties engaged in discovery and twice attempted to resolve the dispute in mediation, but they did not successfully reach a resolution. (ECF 68.) As described *supra*, the parties filed cross motions for summary judgment, responses, and replies.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").  Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).  Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

### III. ANALYSIS

The Court will first address Defendants' Motion, then Plaintiff's Motion.

1. *Defendants' Motion for Summary Judgment*

Defendants move for summary judgment as to Plaintiff's claim for liquidated damages on the basis that a conflict of laws mandates this Court to apply Minnesota law to Plaintiff's

5

Complaint, and liquidated damages provisions are not enforceable under the Minnesota Franchise Act. (DMSJ at 1-11.) Defendants also request summary judgment as to Plaintiff's claim for actual damages, as they contend that Plaintiff has not provided a calculation of those damages sufficient meet the requirements of Minnesota law. (*Id*. at 12-16.) The Court will address each argument, and Plaintiff's responses, in turn.

    a. *Choice of law*

The parties do not dispute that the Franchise Agreement, by its own terms, is "governed by and construed under the laws of the State of New Jersey, except for its conflicts of law principles," and that "[t]he New Jersey Franchise Practices Act will not apply to any Facility located outside the State of New Jersey." (ECF 1-1 at § 17.6.1.) The parties also agree that federal courts exercising diversity jurisdiction must apply the substantive law of the forum state, in this case New Jersey. *See Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 621 (3d Cr. 2009). Finally, they agree that New Jersey courts apply Section 187 of the Restatement (Second) of Conflicts of Laws to resolve choice of law questions. *Portillo v. National Freight, In*c., 323 F. Supp. 3d 646, 651-52 (D.N.J. 2018). The Restatement provides that the law of the state chosen by the parties will apply unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which…would be the state of the application law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflicts of Laws § 187(2).

The parties' agreements end there. Defendants claim that choice of law provision makes it "very clear that the Franchise Agreement did not intend for the New Jersey Franchise Practices Act to apply to any facility located outside of the State of New Jersey, giving deference to the laws

of the state where the Franchise is located." (DMSJ at 3.) They also argue that because the Franchise Agreement states that New Jersey's conflicts of law principles do not apply, "only Minnesota's conflicts of law principles could apply." (*Id.*) Defendants then engage in a Minnesota conflicts of law analysis in which they argue that all factors counsel in favor of applying Minnesota law. (*Id*. at 3-6.) Defendants assert that "Plaintiff subjected itself to [Minnesota's] franchise laws based upon the fact that it contacted the defendants who are all Minnesota residents, filed its federal disclosure document with the relevant state registration agencies, and contractually subjected itself to Minnesota's franchise laws." (*Id*. at 7) (internal citations omitted). Defendants then argue that "[s]ince the franchise agreements were directed to Mr. Pooniwala in Minnesota on behalf of his Minnesota company, the Minnesota Franchise Act applies to this franchise and accordingly all claims by Plaintiff are governed by Minnesota franchise laws as, contractually, New Jersey Franchise Practices Act does not apply to franchises outside of New Jersey." (*Id*. at 8.)

Plaintiff responds that "the language [of the choice of law provision] does not divest this Court of the opportunity to conduct a conflict of law analysis" because "New Jersey law applies unless Shin Hospitality has established prong (a) – that New Jersey has 'no substantial relationship' to the Franchise Agreement – or prong (b) – that Minnesota has a greater interest than New Jersey and applying New Jersey law would violate a fundamental policy of Minnesota law." (Pl. Opp. at 4-5.) Plaintiff argues that Shin cannot establish the first prong because LQF has a principal place of business in New Jersey, which this Court has previously recognized as a substantial relationship for the purposes of the choice of law analysis. *See Diversant, LLC v. Carino*, No. 18-3155, 2018 WL 1610957, at *3 (D.N.J. Apr. 2, 2018). As to the second prong, Plaintiff argues that for Shin to make a showing that Minnesota law applies, it must establish "(1) that Minnesota has a materially greater interest than New Jersey in the determination of this

7

dispute; (2) that application of New Jersey law on the enforceability of a liquidated damages clause would be contrary to a 'fundamental policy' of Minnesota; and (3) that Minnesota law would apply in the absence of an effective choice of law clause." (Pl. Opp. at 6.) Plaintiff asserts that Defendants cannot make such a showing because New Jersey has at least as substantial an interest in the resolution of this dispute as Minnesota, Defendants have not pointed to any fundamental policy of Minnesota's that would be offended by the application of New Jersey law, and the contractual choice of law clause is effective. (*Id*. 6-7.)

On reply, Defendants argue that the Minnesota Franchise Act must apply to this dispute because Defendants are Minnesota residents and a Minnesota corporation. (*See generally* Def. Reply.) In support of their argument, they rely on *Cambria Co., LLC v. M&M Creative Laminants, Inc.*, 11 N.W.3d 318 (Minn. 2024), a case in which the Minnesota Supreme Court concluded that the Minnesota Franchise Act "does not categorically preclude an out-of-state company from enforcing a claim for unfair practices under section 80C.14." It is worth noting that the *Cambria* court also held that a party seeking to enforce the Minnesota Franchise Act must show that the Act is applicable, and that the Court in that case reached its decision in part because "the parties' contract…includes a Minnesota choice-of-law provision." *Id.* at 325.

While the Franchise Agreement's choice of law clause states that it will not be governed by or construed under the conflicts of law principles of the State of New Jersey, the parties' selection of this Court as the forum for resolving contractual disputes, as well as this Court's exercise of diversity jurisdiction over the dispute, demands that New Jersey's conflicts of law analysis applies. *See Kaneff*, 587 F.3d at 621; *see also* Franchise Agreement §§ 17.6.1 (choice of law clause) and 17.6.3 (venue clause). Plaintiff is correct that its status as having a principal place of business in New Jersey establishes a "substantial relationship" sufficient to defeat the exception

8

under the Restatement (Second) of Conflicts of Laws § 187(2)(a). *Diversant*, 2018 WL 1610957, at *3.

As to the exception in Restatement § 187(2)(b), Plaintiff is also correct that Defendants must show that "(1) that Minnesota has a materially greater interest than New Jersey in the determination of this dispute; (2) that application of New Jersey law on the enforceability of a liquidated damages clause would be contrary to a 'fundamental policy' of Minnesota; and (3) that Minnesota law would apply in the absence of an effective choice of law clause" in order for the Court to find that Minnesota law applies. (Pl. Opp. at 6.) Both New Jersey and Minnesota have similar interests in enforcing their laws and public policies pertaining to franchise contracts, but neither state's interest outweighs the other's, especially when the subject of the Franchise Agreement is located in the state of Indiana. *HouseMaster SPV LLC v. Burke*, No. 21-13411, 2022 WL 2373874, at *6 (D.N.J. June 30, 2022) (applying New Jersey law where, as here, the other state did not "have a materially greater interest than New Jersey in settling this dispute").

Since all three factors must be met for the § 187(2)(b) exception to apply, and Defendants have not cleared the first hurdle, the Court's analysis need not go further. The Court finds that the choice of law provision in the Franchise Agreement is enforceable such that New Jersey law applies to this dispute.

    b. *Actual damages*

In their Motion, Defendants argue that because "Plaintiffs [sic] did not rely upon any criteria or methodology beyond liquidated damages, they do not have any claims for any damages pursuant to their complaint and counts 2 and 3 should be dismissed as there is no genuine issue of material fact." (DMSJ at 16.) Plaintiff counters that "LQF's damages can (and should) be measured, at a minimum, by reference to the calculation the parties agreed to in Section 12.1 of

the Franchise Agreement: an amount equal to the average monthly accrued Recurring Fees during the immediately preceding 12 full calendar months multiplied by 36." (Pl. Opp. at 8.) Plaintiff asserts that it has presented evidence to support its claim for actual damages in the form of "documents reflecting the gross room revenue reported by Shin Hospitality for the Merrillville Facility for the twelve (12) month period prior to Shin Hospitality's termination and the corresponding fees Recurring Fees [sic] due to LQF given that such fees are based on a percentage of reported gross room revenues." (*Id*. at 9; *see also* ECF 75-8.) On reply, Defendants argue that "Plaintiff has provided nothing other than a cursory, and most certainly inadequate, 'calculation' as there is (1) no amount certain, let alone a range of damages; (2) and the sources of information, while identified, contain so many myriad of potential numbers that their response is beyond vague." (Defs. Reply at 5-6.)

Having determined that New Jersey law applies to these claims, the Court finds that Plaintiff has presented sufficient evidence of its claimed actual damages. As Plaintiff pointed out in its brief, this Court has in the past accepted damages calculations such as the one Plaintiff offers in this case. *See Howard Johnson Int'l, Inc. v. SSR, Inc.*, No. 14-4611, 2017 WL 1246348, at *4 (D.N.J. Apr. 3, 2017); *Knights Franchise Sys., Inc. v. Sairam, Inc.*, No. 17-00932, 2017 WL 4074023, at *5 (D.N.J. Sept. 14, 2017). It is also worth noting that, since New Jersey law applies to this dispute and the liquidated damages clause is enforceable, the need for actual damages is obviated, as actual damages are a remedy to be provided in lieu of, rather than in addition to liquidated damages.

Accordingly, Defendants' motion for summary judgment is **DENIED**.

2. *Plaintiff's Motion for Summary Judgment*

In its motion for summary judgment, Plaintiff argues that "[i]n light of the uncontradicted evidence and the unambiguous contract terms, no elements of breach are in dispute." (PMSJ at 7.) Plaintiff further claims that "[a]s a result of Defendants' breaches, LQF is entitled to $168,657 in Recurring Fees (inclusive of interest through October 2024 which continue to accrue through the date of a potential judgment), $378,92.22 in liquidated damages, prejudgment interest, as well as attorneys' fees and costs." (*Id*. at 8.) Plaintiff also asserts that LQF and LQM are entitled to summary judgment on Defendants' counterclaim and third-party complaint because Defendants cannot establish a violation of the Minnesota Franchise Act, Defendants have not offered evidence to support their claim that Plaintiff made negligent or intentional misrepresentations, Defendants did not enter a contract with LQM, Defendants cannot establish a breach of contract as to LQF, and Defendants cannot establish a breach of the implied covenant of good faith and fair dealing as to LQF. (*Id*. at 14-24.)

In response, Defendants argue that Plaintiff is not entitled to summary judgment because "there are genuine issues of material as to whether material omissions in the FDD existed." (Def. Opp. at 5.) Defendants assert that Plaintiff breached the Franchise Agreement first by failing to include certain information in the FDD. (*Id*.) They also assert that Plaintiff "breached their covenant of good faith and fair dealing by entering into a franchise agreement within 10 miles of Plaintiff's hotel, without notifying Defendants until after the fact and without providing a copy of the impact study." (*Id*.) Defendants also argue that Plaintiff breached the Franchise Agreement by removing Defendants from Plaintiff's central reservation system. (*Id*.)

Plaintiff replies that, despite the points Defendants raise, there remains no genuine dispute of material fact in this case, and they are entitled to summary judgment. Regarding Defendants claim that Plaintiff improperly removed them from the central reservation system, Plaintiff argues

11

that "[i]t is undisputed that Defendants did not pay certain Recurring Fees constituting a failure to perform under the Franchise Agreement and, as a result, LQF suspended the Merillville Facility from the reservation system as permitted under the Franchise Agreement." (Pl. Reply at 3.) Regarding the breach of covenant claim, Plaintiff argues that the claim is "simply untrue" and that "[a]rguments made in briefs alone are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." (*Id*. at 3-4; internal quotations omitted.) Concerning Defendants allegations that the FDD was materially deficient or misleading, Plaintiff points out that Defendants cite "no legal authority in support of their assertion" and Defendants do not "identify any section of the Franchise Agreement that they allege would be breached by a lack of disclosure of certain information in an FDD, which is a separate document (not even itself a contract) that Defendants received prior to entering into the Franchise Agreement." (*Id*. at 4.)

Having weighed the parties' arguments, the Court is persuaded that Plaintiff is entitled to summary judgment on all counts of its Complaint for the following reasons. First, although Defendants contend in their opposition brief that "it is also a fact that the Defendants did not unilaterally terminate the [Franchise Agreement,]" the evidentiary record reflects that the termination was in fact unilateral. (Def. Opp. at 5.) Defendants terminated the Agreement by letter dated June 19, 2022. (ECF 72-10.) *See, e.g.*, *Days Inns Worldwide, Inc. v. DB Vancouver, LLC*, No. 12-4781, 2015 WL 3938883, at *4 (D.N.J. June 25, 2015) (finding that a party's acknowledgement of a counterparty's unilateral termination of a Franchise Agreement does not render the termination bilateral). Second, while Defendants have taken issue with the FDD and alleged that it was in some ways deficient, Plaintiff has established that these issues are not sufficiently articulated as to apprise the Court of a genuine dispute of material fact about the way in which the FDD bore on Defendants' acquiescence to the Franchise Agreement. Thus, the

alleged dispute about the FDD falls into that category of "some alleged factual dispute between the parties [that] will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. There is no other dispute about the Franchise Agreement: the parties entered the contract, Defendants terminated the contract unilaterally and breached it by failing to pay the obligatory Recurring Fees, and Plaintiff suffered damages as a result.[2]

Accordingly, Plaintiff is also entitled to summary judgment on damages. As discussed previously, the Franchise Agreement's liquidated damages clause is enforceable under New Jersey law. As just mentioned, Plaintiff is also entitled to the Recurring Fees owed to it under the Franchise Agreement. This Court has granted damages flowing from similar contractual schemes in the past. *See, e.g.*, *Ramada Worldwide, Inc. v. Mgmt. Sol. Holdings, LLC*, No. 23-2183, 2024 WL 4579381, at *4 (D.N.J. Oct. 24, 2024) (finding the itemized statement demonstrated the amount of the recurring fees to which the plaintiff was entitled ); *Days Inns Worldwide, Inc. v. Mayu & Roshan, LLC*, No. 06-1581, 2007 WL 1674485, at *6 (D.N.J. June 8, 2007) (same). Per Section 7.3 of the Franchise Agreement, which provides for prejudgment interest of 1.5% per month on overdue payments, Plaintiff is also entitled to prejudgment interest on the Recurring Fees and the liquidated damages. *Travelodge Hotels, Inc. v. BO-ED Inc.*, No. 04-4310, 2007 WL 8053668, at *13 (D.N.J. Mar. 19, 2007) (allowing prevailing parties to collect prejudgment interest pursuant to contractual provisions). Similarly, the Franchise Agreement states at Section 17.4 that

---

[2] Defendants' counterclaims and third-party complaint are also denied, as they rest exclusively on the same deficient claims about the alleged omissions and misrepresentations in the FDD provided by Plaintiffs. Furthermore, LQM was never in privity of contract with Defendants and thus Defendants cannot bring any claims for breach of contract or breach of the implied covenant of good faith and fair dealing against it. *United Van Lines, LLC v. Lohr Printing, Inc.*, No. 11-04761, 2014 WL 837087, at *3 (D.N.J. Mar. 4, 2014). Travel & Leisure was apparently never served and so is dismissed from this case with prejudice.

the non-prevailing party will cover the prevailing party's attorney's fees and costs and expenses of litigation.

While the Court grants Plaintiff's motion for summary judgment as to damages, it reserves on the question of exactly what the amounts of the damages will be pending a full accounting of the various damages and fees Defendants owe to Plaintiffs. *Ramada Worldwide Inc. v. Keys Hosp.*, LLC, No. 18-3993, 2024 WL 5256747, at *7 (D.N.J. Dec. 30, 2024).

### IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendants' Motion for Summary Judgment is **DENIED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    James B. Clark, U.S.M.J.
       Parties